UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACY A. WATKINS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 10-cv-5632-BHS-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>NOTING DATE: December 23, 2011 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 18, 20, 24).

Based on the relevant record, the Court concludes that the Administrative Law Judge failed to specify the weight given to the treating physician and failed to give germane reasons to discount the lay evidence. For these reasons, this matter should be

reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, TRACY A. WATKINS, was born in 1960 and was forty-five years old on her alleged disability onset date of October 11, 2006 (Tr. 57). In January, 2004, plaintiff had a job in recycling, which included loading cardboard boxes into dumpsters (see Tr. 237, 241). On January 12, 2004, on her way to work, plaintiff slipped and fell while exiting her car and fell on her "butt and hip area" (see Tr. 199, 241). Plaintiff experienced discomfort when attempting to perform her normal work activities that day (see Tr. 241). She reported at that time that it was difficult for her to sit or stand because of the pain in her right hip and gluteal region (see Tr. 241-42).

Subsequently, on October 11, 2005, plaintiff was injured while working for Daybreak Youth Services (see Tr. 264). She reportedly was opening a locked door with teenagers behind her when she was pushed into a wall (id.). While extending her arm to catch her fall, she felt immediate pain in her rib case, extending from the spine around to the sternum (id.). She later experienced neck pain on her right side (id.). Following an emergency room visit, plaintiff's x-rays were normal and her subsequent MRI scan results reportedly were unremarkable (id.).

Plaintiff returned to work, however, she experienced another subsequent injury at Daybreak Youth Services (see Tr. 265). While taking the students for a walk in the park, plaintiff reported that a student picked her up and threw her to the ground on her back

(id.). Subsequently, she reported that she did not return to work after this incident and that her symptoms had increased (id.).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in February, 2006, alleging disability onset on October 11, 2005 (Tr. 57-61). Her application was denied initially and following reconsideration (Tr. 41-43, 46-47). Plaintiff's requested hearing was held on February 4, 2009 before Administrative Law Judge Richard A. Say ("the ALJ") (Tr. 431-50). On March 18, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled as defined by the Social Security Act (Tr. 18-30).

On July 7, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 5-8). See 20 C.F.R. § 404.981. In September, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 4). Defendant filed the sealed administrative record of the transcript ("Tr.") on March 22, 2011 (see ECF No. 17). In her Opening Brief, among other contentions, plaintiff contends that the ALJ: (1) failed to evaluate properly the medical opinions of Dr. Raymond V. Larsen, M.D. and Dr. Karli Whittam, M.D.; (2) failed to evaluate properly the lay evidence; and, (3) failed to account for or address all of plaintiff's assessed limitations in the residual functional capacity assessment (see ECF No. 18, pp. 5-11).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.

1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the

Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the medical evidence</u>.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (non-treating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan, supra, 169 F.3d at 602 (*quoting* Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (*citing* Brawner v. Sec. HHS, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

According to Social Security Ruling ("SSR") 96-8p, a residual functional assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

a. Dr. Karli Whittam, M.D. ("Dr. Whittam"), treating physician

Dr. Whittam treated plaintiff on at least four occasions at the Family Wellness Center from March 16, 2006 through June 29, 2006 (see Tr. 297-305). On March 16, 2006, Dr. Whittam noted plaintiff's injury in October, 2005 and her resultant low back pain and thoracic pain (see Tr. 304). While the ALJ never mentioned Dr. Whittam by name in his decision, he did refer to Dr. Whittam's records when discussing the conservative treatment that claimant received. (Tr. 26 (reference to Exhibit 16F, Tr, 297 – 305)).

In her Opening Brief, plaintiff contends that Dr. Whittam "observed that Plaintiff was unable to sit or stand for any length of time and had some decrease in the range of motion in her spine and neck" (see ECF No. 18, p. 6). Although Dr. Whittam observed decreased range of motion on one occasion, she did not report an objective observation that plaintiff was unable to sit or stand for any length of time (see Tr. 299, 301). Instead, Dr. Whittam simply noted plaintiff's subjective report of these symptoms, as indicated by this information being included in the subjective portion of the report ("S:"), and not being included in the objective portion of her report ("O:")(id.).

Although plaintiff appears to fault the ALJ for failing to discuss why he did not accommodate plaintiff's sitting limitation, the Court concludes that Dr. Whittam did not opine specifically that plaintiff suffered from any sitting limitation. In fact, Dr. Whittam does not appear to have offered any opinions regarding any specific functional limitations of plaintiff. Because the ALJ did not reject the opinions of this treating physician and because this treating physician did not offer specific opinions regarding functional

limitations, the ALJ need not set forth an extensive analysis regarding those opinions. As noted by plaintiff, the ALJ "is not required to discuss all evidence presented, she (sic) must explain the rejection of significant probative evidence" (ECF No. 18, p. 6, (*citing* Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). For these reasons, the Court finds no harmful error in the ALJ's discussion of the opinions of Dr. Whittam.

    b.  Dr. Raymond V. Larsen, M.D. ("Dr. Larsen"), treating physician

Dr. Larsen treated plaintiff from at least January 19, 2004 through April 15, 2005 after plaintiff slipped and fell while getting out of her car in January, 2004 (see Tr. 182-231). On January 19, 2004 Dr. Larsen released plaintiff to work on limited duty, with limitations on lifting (see Tr. 231). On May 5, 2004, he assessed plaintiff with additional limitations, including no prolonged standing/walking longer than thirty minutes (see Tr. 201). On May 27, 2004, Dr. Larsen added an additional limitation in that plaintiff needed to be allowed to alternate between sitting and standing (Tr. 200). This limitation was repeated on July 30, 2004 (Tr. 199). On September 16, 2004, Dr. Larsen updated plaintiff's assessed functional limitations, increasing plaintiff's limitation on bending to no more than 3 times per hour, from bending no more than 6 times per hour (Tr. 198). However, he no longer included the limitation regarding the ability to alternate between sitting and standing (id.). This functional assessment was repeated on September 23, 2004 (Tr. 197); on October 7, 2004 (Tr. 195); and, on November 16, 2004 (Tr. 194). On December 29, 2004, Dr. Larsen again adjusted plaintiff's assessed limitations, removing the limitation regarding bending; removing the limitation on pushing/pulling over fifteen

pounds of force; and, changing the limitation from lifting over fifteen pounds to lifting over twenty pounds (Tr. 193).

On February 7, 2005, Dr. Larsen adjusted plaintiff's assessed functional limitations, again adding a restriction that plaintiff needed to be able to alternate sitting and standing as needed for pain (Tr. 191). This assessment was repeated by Dr. Larsen on March 11, 2005 (Tr. 189) and on April 15, 2005, on the date that he last examined plaintiff (Tr. 182).

The ALJ discussed the opinions of Dr. Larsen, noting that Dr. Larsen opined that plaintiff must be allowed to alternate sitting and standing as needed and that plaintiff could not stand or walk for more than thirty minutes (see Tr. 26 (*citing* Exhibit 8F/93, i.e., Tr. 182)). However, the ALJ failed to credit these opinions regarding functional limitations as assessed by Dr. Larsen in the determination of plaintiff's residual functional capacity ("RFC") (see Tr. 25). According to Social Security Ruling ("SSR") 96-8p, if a "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. The ALJ here committed error by failing to explain why Dr. Larsen's opinions regarding plaintiff's specific functional limitations were not adopted. See id.

Defendant claims no error in the ALJ's failure to adopt Dr. Larsen's opinions regarding plaintiff's functional limitations because Dr. Larsen's opinions were given prior to plaintiff's alleged date of disability onset of October 11, 2005 and because the ALJ elsewhere in his decision summarized the conflicting evidence and interpreted it (see Response Brief, ECF No. 20, p. 5). The Court does not adopt these arguments. First, the

Court notes that the ALJ did not indicate that he was rejecting Dr. Larsen's opinions because they were given prior to plaintiff's alleged onset date of disability (see Tr. 26). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, supra, 554 F.3d at 1226-27.

In addition, because the RFC as assessed by the ALJ conflicted with the functional assessment by treating physician Dr. Larsen, and because if the ALJ credited these relevant opinions by Dr. Larsen he may have come to a different disability determination, the opinions by Dr. Larsen regarding these functional limitations are significant. An ALJ must explain why "significant probative evidence has been rejected." Vincent, supra, 739 F.2d at 1394-95.

Finally, even though the ALJ discussed many relevant medical opinions and stated some of his interpretations thereof, when the determination regarding disability is not fully favorable to a claimant, the ALJ's decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12. The ALJ committed error by failing to indicate the weight he gave to the opinions by Dr. Larsen. As discussed, Dr. Larsen gave specific opinions regarding plaintiff's functional limitations.

For the stated reasons and based on the relevant record, the Court concludes that the ALJ committed legal errors in his assessment of the opinion of Dr. Larsen. Therefore, the ALJ's written decision should be set aside and this matter should be remanded for further administrative proceedings. Bayliss, supra, 427 F.3d at 1214 n.1.

2. The ALJ failed to evaluate properly the lay evidence.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (*citing* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, 557 F.3d at 1116 (*citing* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Mr. Brian Larson ("Mr. Larson"), plaintiff's boyfriend, filled out a function report, indicating specific opinions regarding plaintiff's abilities and limitations (see Tr. 93-101). Mr. Larson indicated that he had known plaintiff for three and a half years and spent about twenty-four hours a week with her (see Tr. 93). For example, Mr. Larson indicated that he used to go on long walks with plaintiff, but that plaintiff could not walk more than a block or sit for long without complaining (Tr. 94, 97). He indicated that she needed reminders to shower, because she got depressed and didn't want to do anything (Tr. 95). Mr. Larson also opined that plaintiff did not cook as often as she did prior to her back injuries (id.).

Mr. Larson opined that plaintiff had a difficult time getting along with others (Tr. 97). He indicated that she exhibits aggressive behavior and can be loud and overbearing (id.). He also indicated that his friends have told him that she's too much, in that she's too hyper and talkative (id.). Mr. Larson indicated his opinion regarding various areas in which plaintiff suffered specific functional limitations, including lifting, standing, walking, sitting, kneeling, understanding, following instructions and getting along with

others, among other things (see Tr. 98). He specified that plaintiff had difficulties following instructions as her mind was always racing (id.).

Mr. Larson indicated that plaintiff had difficulties getting along with bosses and other workers (Tr. 98). He provided a recent example when plaintiff "got into an argument at work in front of young teenagers she looked after" (Tr. 99). He also indicated that plaintiff did not deal with stress well, specifying that she made mountains out of molehills and worried about things for hours (id.). Mr. Larson provided a narrative regarding plaintiff's abilities and limitations (see Tr. 100-01). He indicated that plaintiff got manic, obsessive, panicked and stressed out over situations that a "normal person would shrug off" (Tr. 100).

The ALJ determined that Mr. Larson's assessments were "primarily based on the claimant's subjective complaints" (Tr. 29). Although some of the opinions of Mr. Larson mirrored the complaints asserted by plaintiff, there also were opinions that were based on Mr. Larson's personal observations, such as that they used to go on long walks together, but no longer did so because plaintiff could not walk more than a block or sit for long without complaining (Tr. 94, 97). He also indicated that plaintiff needed reminders to shower and that she did not cook as often as she used to since her back injuries (Tr. 95). Mr. Larson indicated that his friends have told him that she's too much, in that she's too hyper and talkative (Tr. 97) and indicated his opinion regarding various areas in which plaintiff suffered specific functional limitations (Tr. 98). That these opinions were "primarily based on the claimant's subjective complaints" is not a conclusion supported by substantial evidence in the record.

The ALJ indicated that he was considering Mr. Larson's lay statement "with caution" because Mr. Larson had "a personal relationship with the claimant" and that he lacked "the expertise and possibly the motivation to offer an objective functional assessment" (Tr. 29). However, testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). Therefore, the fact that Mr. Larson had "a personal relationship with the claimant" is not a valid reason to disregard his opinions. See id.

In addition, according to the Ninth Circuit, absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to h[er] disability benefits," an ALJ may not reject that witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." Id. For this reason, the ALJ's determination that Mr. Larson *possibly* lacked the motivation to offer an objective functional assessment, without any support in the record for this determination, is not a valid reason to disregard Mr. Larson's opinions. The ALJ did not support the determination that Mr. Larson possibly lacked the motivation to offer an objective functional assessment with any fact other than the relationship of Mr. Larson to plaintiff. As already discussed, according to the Ninth Circuit, evidence from "other non-medical sources," such as friends and family members, may not be disregarded simply because of their relationship to the claimant. See Valentine, supra, 574 F.3d at 694; see 20 C.F.R. § 404.1513 (d)(4). Mr. Larson indicated in his lay statement that he had "filled this form

out as honest and truthful (sic) as" he could have (Tr. 101). The ALJ did not demonstrate otherwise (see Tr. 29). For this reason, the ALJ's determination that Mr. Larson possibly lacked "the motivation to offer an objective functional assessment" is not supported by substantial evidence in the record and is not a legally sufficient reason to fail to credit the specific functional assessments provided by Mr. Larson. See Valentine, supra, 574 F.3d at 694.

Finally, the Ninth Circuit has characterized lay witness testimony as "competent evidence," and has concluded that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce, supra, 557 F.3d at 1115. The Court already has noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Id. By definition, lay testimony is testimony offered by non-medical sources, and as such, is by definition offered by individuals who lack expertise in medicine and psychology. The Ninth Circuit nevertheless has concluded that the ALJ must consider such evidence and must offer reasons germane to each witness to disregard it. See id. Simply noting that an "other, non-medical" source does not have medical expertise is not a legally sufficient reason to disregard evidence supplied by such a source. See id.; Turner, supra, 613 F.3d at 1224; 20 C.F.R. § 404.1513 (d)(4). As a result, the ALJ's assessment that Mr. Larson lacked the expertise to offer an objective functional assessment is not a reason germane to Mr. Larson to fail to credit his opinions regarding plaintiff's functional limitations. See Turner, supra, 613 F.3d at 1224; Bruce, supra, 557 F.3d at 1115; 20 C.F.R. § 404.1513 (d)(4).

According to the Ninth Circuit, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases). Because the Court cannot so conclude with confidence, the Court cannot find that the ALJ's error in discussing the lay evidence offered by Mr. Larson is harmless error. Therefore, this matter must be reversed and remanded to the Commissioner for further consideration of the functional assessments offered by Mr. Larson. See id. The ALJ's legal error in assessing the opinions of Mr. Larson provides and independent reason for the ALJ's written decision to be set aside and for this matter to be remanded for further administrative proceedings. See id.; see also Bayliss, supra, 427 F.3d at 1214 n.1.

3. <u>The issue of plaintiff's credibility was not raised by plaintiff here and is not relevant to the questions presented in plaintiff's request for judicial review</u>.

In his Response Brief, defendant argues that the ALJ made an adverse credibility determination regarding plaintiff's testimony and supported this finding by noting evidence of malingering (see ECF No. 20, p. 4). Defendant contends that although plaintiff has not challenged the ALJ's determination regarding plaintiff's credibility, "it is nonetheless relevant insofar as it informed the remainder of the ALJ's decision" (id.). The Court recognizes that the ALJ here made an adverse credibility determination and also recognizes that this finding has not been challenged by plaintiff. The Court also

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 17

recognizes that plaintiff failed to reply to Defendant's discussion of the ALJ's finding regarding plaintiff's credibility (see ECF No. 24).

In this matter, the ALJ's determination regarding plaintiff's credibility is not relevant to any of the questions presented to this Court and is not relevant to the conclusions made herein. Although Defendant is correct that it was relevant to the ALJ's written decision, it is not a relevant factor regarding the issues discussed in this Report and Recommendation. The Court's conclusion that the ALJ's review of Dr. Whittam's opinions was proper, that his review of Dr. Larsen's opinions was not proper, and that the ALJ's review of the lay evidence provided by Mr. Larson was improper did not require consideration of the claimant's credibility.

4. <u>The Administrative Law Judge assigned to this matter following remand should reassess plaintiff's limitations when making the determination regarding her residual functional capacity ("RFC").</u>

Plaintiff complains that although the ALJ gave significant weight to the opinions of Dr. Anita Peterson, Ph.D. ("Dr. Peterson"), he did not accommodate plaintiff's limitation, as assessed by Dr. Peterson, that plaintiff could only persist for two hours (see Opening Brief, ECF No. 18, pp. 10-11). Plaintiff also complains that the ALJ did not explain why he failed to accommodate plaintiff's alleged limitation in persisting for only two hours (see id.). Defendant argues that "any limitation on persistence at complex tasks is immaterial to the ALJ's determination," as the ALJ found that plaintiff was capable of performing past relevant work as a Small Products Assembler, which is unskilled work

requiring only a General Educational Development (GED) reasoning level of 2 (see Response Brief, ECF No. 20, p. 7). Plaintiff did not reply to this argument (see Reply, ECF No. 24, pp. 1-3).

The Court has concluded that the ALJ did not evaluate properly the medical evidence offered by Dr. Larsen and that he did not evaluate properly the lay statement by Mr. Larson. In addition, according to the relevant federal regulation, before determining a claimant's "residual functional capacity ["RFC"] for work activity on a regular and continuing basis," the nature and extent of a claimant's physical limitations must be assessed. See 20 C.F.R. § 404.1545(b). Assessing properly a claimant's physical limitations requires a proper review of the medical and other evidence. See id. Therefore, because the ALJ failed to review properly the medical and the lay evidence, the ALJ's determination regarding plaintiff's residual functional capacity ("RFC") cannot be upheld at this time.

In addition, according to Social Security Ruling ("SSR") 96-8p, a residual functional assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. For these reasons, the Administrative Law Judge assigned to this matter following remand will need to reassess plaintiff's residual functional capacity. See 20 C.F.R. § 404.1545(b); SSR 96-8p, 1996 SSR LEXIS 5 at *20.

## CONCLUSION

The ALJ failed to specify the weight given to the treating physician, Dr. Larsen, and failed to give germane reasons to discount the lay evidence provided by Mr. Larson. Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 23, 2011, as noted in the caption.

Dated this 2nd day of December, 2011.

J. Richard Creatura
United States Magistrate Judge